IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PORTUS SIGNAPORE PTE LTD and PORTUS PTY LTD., <br><br> Plaintiffs, <br><br> v. <br><br> OWLET, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS <br><br><br> Case 2:24-cv-00343-TS-JCB <br><br> District Judge Ted Stewart <br> Magistrate Judge Jared C. Bennett |

This action comes before the Court on Defendant Owlet, Inc.'s ("Owlet") Motion to Dismiss for Failure to State a Claim on Which Relief can be Granted Pursuant to Rule 12(b)(6).[1] For the reasons below, the Court will deny the Motion.

I. BACKGROUND

The relevant facts in the Amended Complaint are taken as true for purposes of this Motion and are summarized below.

Portus is a company organized under the laws of Singapore. Its subsidiary, Portus Pty Ltd., is organized under the laws of Australia. Portus is the original creator of the smart home, which allows customers to stay connected and manage their home environments remotely. Portus Pty Ltd. owns the Patents at issue in this case.

Owlet is a Delaware corporation with a regular place of business in Utah. Owlet provides smart home solutions for baby monitoring products.

Portus's Amended Complaint alleges that Owlet infringed two patents owned by Portus Pty Ltd.:

---

[1] Docket No. 36.

- U.S. Patent No. 8,914,526 (the '526 Patent) both directly and indirectly.[2]

- U.S. Patent No. 9,961,097 (the '097 Patent).[3]

The patents are for systems that allow remote control and monitoring of a home security network. Claim 57 of the '526 Patent describes a three-part system which includes a "hardware user browser access device," a network of circuits located in multiple user premises that are part of the internal network, and an external network accessible via a browser that communicates with the other two components.[4] Claim 1 of the '097 Patent describes a similar system.

Portus's Amended Complaint alleges that Owlet's baby monitoring products infringe on its smart home system. On August 15, 2024, Portus filed an Amended Complaint for Patent Infringement.[5] On September 30, 2024, Owlet filed the instant Motion, claiming that Portus's Amended Complaint does not sufficiently allege infringement.[6] On October 28, 2024, Portus filed its Response.[7] On November 25, 2024, Owlet filed its Reply.[8]

## II. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[9] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10] "A pleading that offers

---

[2] Docket No. 30 ¶¶ 64–110.

[3] *Id.* ¶¶ 111–150.

[4] Docket No. 30-1, at 18.

[5] Docket No. 30.

[6] Docket No. 36.

[7] Docket No. 37.

[8] Docket No 40.

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[11] "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] In making this determination, the court accepts all well-pleaded factual allegations and views the complaint in the light most favorable to the non-moving party.[13]

In deciding a motion to dismiss, a district court considers the complaint, any attached exhibits,[14] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[15] The court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[16]

### III. DISCUSSION

#### A. Direct Infringement

Owlet argues that Counts I and III of the Amended Complaint do not plausibly allege direct infringement of Claim 57 of the '526 Patent and Claim 1 of the '097 Patent. Under 35 U.S.C. § 271(a), a defendant infringes a patent if it "makes, uses, offers to sell, or sells any patented inventions, within the United States or imports into the United States any patented

---

[11] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[12] *Id.* at 679 (internal citations and quotation marks omitted).

[13] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[14] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[15] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[16] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

invention" without authority. "In order to 'make' [a] system under § 271(a), [a single entity] would need to combine all of the claim elements."[17] At the pleadings stage, "[a] plaintiff is not required to plead infringement on an element-by-element basis."[18] Indeed, "[n]othing more is required" than to "plausibly allege . . . [a claim] . . . and [to] support[] those assertions with specific factual allegations." [19] However, a plaintiff "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."[20]

First, Owlet argues that the Amended Complaint does not sufficiently allege that Owlet "makes" the entire patented system because Owlet customers, not Owlet, provide the hardware that completes the system. Portus responds that Owlet mischaracterizes the Amended Complaint and that Owlet "makes" the entire system through the Ayla Internet of Things ("IoT") functionality. This functionality allows the system to "run" without requiring use of a hardware access device.

Claim 57 of the '526 Patent requires a "hardware user access browser device that comprises a processor running an access browser."[21] Likewise, Claim 1 of the '097 Patent

---

[17] *Centillion Data Sys., LLC v. Qwest Commc'ns. Int'l., Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011); *see also CTD Networks, LLC v. Amazon.com, Inc.*, 688 F. Supp. 3d 436, 444 (W.D. Tex. 2023); *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 612 F. Supp. 3d 408, 415–16 (D. Del. 2020).

[18] *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).

[19] *Id.* at 1356.

[20] *Id.* at 1353.

[21] Docket No. 30 ¶ 69.

requires a "hardware processing circuitry running an access browser model."[22] These claim limitations indicate that a hardware device with browser access is required to "make" the system. The Amended Complaint does not allege that that Owlet makes its own hardware access device, and so a user can only "make" the product by connecting a smartphone or other hardware device to the system. Although the Amended Complaint focuses on how Owlet's customers "make" the system through their access, it also alleges that Owlet employees internally access the system for marketing, troubleshooting, or testing purposes. The Amended Complaint cites Federal Communications Commission ("FCC") reports, screenshots of Owlet's YouTube videos, and screenshots of Owlet's publications showing that Owlet, like its customers, access the system via smartphones and other hardware.[23] Based on these facts as presented in the Amended Complaint, the Court finds that the pleadings plausibly allege that Owlet "makes" the system.

Second, Owlet claims that the Amended Complaint does not plausibly allege that Owlet "uses" the system in an infringing way. "[D]irect infringement by 'use' of a system claim 'requires a party to use each and every element of a claimed system.'"[24] According to the Federal Circuit, "use" of a system requires the defendant to "put the invention into service" by (1) controlling the system and (2) obtaining benefit from the system.[25] "[T]he alleged benefit should be tangible, not speculative, and tethered to the claims."[26] In a similar case between Portus and another home security system company, the District of Delaware found that Portus plausibly

---

[22] *Id.* ¶ 116.

[23] *Id.* ¶¶ 88–90, 136–138.

[24] *Centillion Data Sys., LLC*, 631 F.3d at 1284 (quoting *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)).

[25] *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017); *see also Centillion Data Sys., LLC*, 631 F.3d at 1284; *NTP, Inc.*, 418 F.3d at 1317.

[26] *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018).

alleged control when users "initiat[ed] requests that caused the back-end processing equipment to generate reports and return to the customer" even though the user was not in full physical control of all the components of the system.[27] The Delaware Court also found, however, that because Portus only alleged that defendant's customers controlled and benefited from the system, it did not plausibly allege that defendant itself controlled and benefited from the system.[28]

The Amended Complaint alleges that both Owlet and its customers control the system when they access the system. As discussed above, the Patent claims require hardware to access the system, and the Amended Complaint's assertions that Owlet "runs" the system without needing hardware does not reflect the patent claims.[29] However, the Amended Complaint also alleges that Owlet "runs" the system when it retrieves and records information from the connected devices and also when it performs internal testing and supports this assertion with facts and photographs. Based on these alleged facts, the Court finds that the Amended Complaint plausibly pleads that Owlet controls the system during these periods.

As to whether Owlet benefits, the Amended Complaint alleges that Owlet benefits by requiring customers to agree to terms and conditions to use Owlet's products, and it in turn gains access to users' sensitive data. This is a tangible benefit that arises from Owlet's control and access to the system. Accordingly, the Court finds the Amended Complaint connects the claim components with specific benefits and that the Amended Complaint adequately pleads that Owlet "uses" the system.

---

[27] *Portus Singapore Pte Ltd v. SimpliSafe, Inc.*, No. 19-480-LPS-JLH, 2019 WL 6071180 at *7 (D. Del. Nov. 15, 2019).

[28] *See id.* at *5.

[29] Docket No. 30 ¶¶ 91, 139.

Third, Owlet argues that Portus's claim does not adequately allege infringement by its own use of the system because the Patent claims require multiple "users" in multiple locations distinct from the network, and the Amended Complaint did not properly allege these requirements. Portus responds that claim construction would be required to resolve this issue and because claim construction is not appropriate at the pleadings stage, the Court should deny dismissal.[30]

In *Sapphire Crossing LLC v. Robinhood Markets, Inc.*, a District of Delaware court denied a motion to dismiss based on a complaint's one-sentence allegation and supporting claim charts, which alleged that a defendant's internal use infringed a patent.[31] Conversely, here, the Amended Complaint alleges Owlet's internal use of its products is for multiple purposes and provides details of its use.[32] The Court finds that this level of detail is enough to withstand dismissal at the pleadings stage. Further, contrary to Owlet's argument, the Patents do not define the number of users or location requirements and accordingly, claim construction may be required to resolve these issues.

In summary, the Court finds that the Amended Complaint plausibly alleged Owlet's internal "making" and "use." Thus, the Court will deny the Motion to Dismiss as it relates to the direct infringement claims.

B. Indirect Infringement

---

[30] *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012) ("[C]laim construction at the pleading stage—with no claim construction processes undertaken—[is] inappropriate").

[31] No. 18-1717-MN-CJB, No. 20-726-MN-CJB (Consolidated), 2021 WL 149023 (D. Del. Jan. 15, 2021).

[32] Docket No. 30 ¶¶ 88–90, 136–138.

Next, Owlet argues that Count II of the Amended Complaint cannot state a claim for indirect infringement under 35 U.S.C. §§ 271(b) and (c) because it did not allege an underlying act of direct infringement by a third party and, even if it had, it did not sufficiently allege that Owlet had the requisite intent.

### a. Underlying Act of Direct Infringement

"Although not directly infringing, a party may still be liable for inducement or contributory infringement of a . . . claim under 35 U.S.C. §§ 271(b), (c) if it sells infringing devices to customers who use them in a way that directly infringes."[33] "There can be no inducement or contributory infringement without an underlying act of direct infringement."[34]

Owlet contends that the Amended Complaint does not set forth how a third party uses every element of the entire system of Claim 57 of the '526 Patent. It also argues that when a customer accesses the system with their hardware, they do not "put the system into use." However, the Federal Circuit has ruled that a customer can "use" a system even though they do not have physical possession or control of a network or system when they "caus[e] the system as a whole to perform . . . processing and obtaining the benefit of the result . . . . It makes no difference that the back-end processing is physically possessed by [the defendant]."[35]

The Amended Complaint specifically discusses how customers "benefit[] from each of the claim limitations of claim 57 of the '526 patent" and then lists each claim limitation, alleging that the customer retrieves information from the devices which are connected to the Owlet server

---

[33] *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (citation omitted).

[34] *Id.* (citation omitted).

[35] *Centillion Data Sys., LLC*, 631 F.3d at 1285.

and thus controls and receives the benefit of the claimed system.[36] Additionally, customers "combine" the system as Owlet does with its own internal use when they use hardware to access the system, thus "making" the system as discussed above. Accordingly, the Court finds the Amended Complaint sufficiently pleads an underlying act of direct infringement by Owlet's customers.

                b. Induced Infringement

Induced infringement claims "require[] knowledge of the patent in suit and knowledge of patent infringement."[37] "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement."[38] The plausibility requirement at the pleadings stage is not akin to a "'probability requirement . . . it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."[39]

Owlet argues that the Amended Complaint does not plausibly allege induced infringement because Owlet was not on notice that it was liable for induced infringement by its customers. The Amended Complaint includes a 2016 letter Portus sent Owlet.[40] The letter states that Owlet's product, the Smart Sock and base station, infringes the '526 Patent and also alleged that other Owlet products infringed on the patent. In *Lifetime Industries, Inc.,* the Federal Circuit found that a letter a plaintiff sent to a defendant indicated intent when it mentioned the patent

---

[36] Docket No. 30 ¶ 105.

[37] *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (citation omitted).

[38] *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

[39] *Bill of Lading*, 681 F.3d at 1341 (quoting *Twombly*, 550 U.S. at 556).

[40] Docket No. 30-3.

number, the patent's scope, and products the patent covered. Drawing parallels between the letter here and plaintiff's in *Lifetime Industries, Inc.*, the Court finds the allegation is sufficiently pled to pass muster at the Motion to Dismiss stage.

   c. Sufficiency of the Complaint

Finally, Owlet argues that the Amended Complaint's allegations are conclusory and speculative. At the pleadings stage "[n]othing more is required" than to "plausibly allege . . . [a claim] . . . and [to] support[] those assertions with specific factual allegations."[41] The Amended Complaint includes specific examples for each claim element, and the Court will likewise deny the Motion on this argument.

## IV. CONCLUSION

It is therefore

ORDERED that the Defendant's Rule 12(b)(6) Motion (Docket No. 36) is DENIED.

DATED this 28th day of May, 2025.

BY THE COURT:

Ted Stewart
United States District Judge

---

[41] *Bot M8 LLC*, 4 F.4th at 1356.